NOT DESIGNATED FOR PUBLICATION

No. 121,828

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEDRICK RONNELL HALEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Oral argument held May 21, 2024. Opinion filed October 11, 2024. Affirmed in part and remanded with directions.

*Hale G. Weirick*, of Perry & Trent, LLC, of Bonner Springs, for appellant.

*Sherri L. Becker*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., MALONE and WARNER, JJ.

PICKERING, J.:  A jury convicted Dedrick Ronnell Haley of methamphetamine distribution, marijuana distribution, possession of drug paraphernalia, and two counts of no drug tax stamp. Haley appeals, raising five claims of error:  (1) The State failed to lay a foundation for labels and redactions contained on exhibits; (2) the district court erred in denying his request for a cautionary instruction on a confidential informant's testimony; (3) the State violated the pretrial discovery rule under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); (4) the State committed prosecutorial error in labeling audio recordings with the wrong dates; and (5) the district court exceeded its jurisdiction by modifying his sentence after pronouncing it from the bench. After

1

reviewing the record, we are not persuaded by Haley's first four arguments and affirm his convictions. Regarding his fifth issue, we remand with directions to correct the journal entry.

FACTUAL AND PROCEDURAL BACKGROUND

In early 2018, Kelly Johansen, a detective for the Atchison County Sheriff's Office, approached Larry Garrison. The detective had evidence against Garrison for distributing methamphetamine and sought Garrison's cooperation about becoming a confidential informant. Johansen wanted Garrison to engage in controlled drug purchases in Atchison. The case against Garrison was never submitted to the Atchison County Attorney's Office after Garrison became an informant.

In March 2018, the State charged Haley with five drug offenses regarding a February 16, 2018 controlled purchase between he and Garrison. The twice-amended complaint ultimately charged Haley with one count of the following: methamphetamine distribution, marijuana distribution, possession of drug paraphernalia with intent to distribute, and two counts of no drug tax stamp. These charges stemmed from a February 16, 2018 planned meeting between Garrison and Haley. Although their meeting fell through, later that day the detective found drugs in Garrison's truck.

Haley filed several pretrial motions, including a motion in limine, requesting the State to provide information about the redacted portions of the State's proposed exhibits. The State responded that Haley had the unredacted versions of the messages turned over to him. The State also explained that it redacted some messages based on the district court's ruling not allowing K.S.A. 60-455 bad acts evidence during trial. The State conveyed that it believed Garrison was messaging about future drug purchases he was attempting to set up with Haley.

2

The State's case at trial relied on the following facts to connect Haley to the drug transaction and corroborate Garrison's version of events.

*February 12, 2018—Garrison's Initial Meeting with Haley*

At trial, four witnesses testified: Detective Johansen, Drug Enforcement Agency (DEA) Agent Justin Olberding, Kansas Bureau of Investigation lab analyst Kamala Hinnergardt, and Garrison. Johansen testified that after Haley became the target of the drug investigation, he instructed Garrison to ask Haley to visit Garrison's home. Garrison and Haley arranged a meeting at Garrison's home on February 12, 2018. Before this meeting, Johansen went to Garrison's home and gave Garrison $800 in drug purchase money from the sheriff's office. Before the meeting, Johansen searched Garrison's person and provided Garrison with a listening device. Johansen was vaguely familiar with Haley at the time; he knew who Haley was, what he looked like, and, according to Garrison, drove a black Volvo.

At the time of the arranged meeting, Johansen saw a black Volvo arrive at Garrison's home but could not see anyone inside the car. Garrison got inside the Volvo and engaged in a 50-minute conversation. During the conversation in the Volvo, Johansen watched thru a window in Garrison's home and listened through the device provided to Garrison. Johansen did not know what Haley's voice sounded like but recognized Garrison's voice. Johansen heard the individual, believed to be Haley, ask what Garrison wanted; Garrison replied he wanted an ounce. Garrison asked about "white" and "green," which Johansen understood to mean methamphetamine and marijuana, respectively. Garrison also testified that he asked Haley about "white" and "green" and understood "white" to mean methamphetamine and "green" to mean marijuana. During the meeting in the Volvo, no drug exchange occurred.

*February 16, 2018—Drugs Placed in Garrison's Truck*

On February 16, 2018, Garrison called Johansen and told the detective about his phone conversation with Haley from the previous day. Garrison reported that he spoke to Haley about meeting at Garrison's home that day between 10:30 a.m. and 11 a.m., however, Haley did not come to Garrison's home during that time frame.

Garrison called Johansen again at 12:07 p.m. to relay a conversation he had had with Haley. Johansen testified Garrison told him that Haley had called Garrison and said he was at Garrison's house. Garrison, who was at his storage unit at the time, advised Haley he was not home. When Haley told Garrison that he did not want to drive around with "it" in his car, Haley suggested that he would leave the "items" in Garrison's truck, lock the truck, and put the key under a brick near Garrison's house. Garrison later testified that he was "positive" that this conversation involved Haley putting drugs in Garrison's truck. Johansen reviewed Garrison's phone logs, which suggested that Garrison had received a call from Haley's phone at 12:02 p.m.

After hearing of the conversation between Garrison and Haley, Johansen told Garrison to stay away from his home until he had a chance to investigate Garrison's truck. Johansen found a brick behind Garrison's truck that appeared to have been recently moved. Johansen found the key to Garrison's truck under the brick. Johansen unlocked Garrison's truck and found a Walmart sack containing substances appearing to be methamphetamine and marijuana. Johansen had not previously searched Garrison's truck to check for drugs. Garrison testified that he did not have drugs in his truck previously, nor did he return to his home before Johansen arrived there. Garrison normally kept his key on the floor of his truck or in the ignition; he had never left the key under a brick before.

After Garrison arrived back at his home, Johansen told him to call Haley on speaker phone about what had just happened. Based on his monitoring of the February 12 conversation, Johansen recognized the voice on the other end of the call as Haley's. Johansen heard Haley say that he wanted to call back on "his other one," which Johansen believed to be another cellphone. Moments later, Garrison received a call from a 913 area code. Johansen recognized the voice on the other end as Haley's and recorded the conversation.

During the call, Haley asked Garrison if he was outside and could see his truck. Garrison asked Haley where Haley had laid the key to the truck, to which Haley responded that he laid the key under a brick on the right rear side of the truck. This was the same spot where Johansen found the key. Neither Johansen nor Garrison detected any confusion from Haley when Garrison asked about the key. Garrison asked Haley what he owed. Haley told Garrison to take a look, and he would get back to him. Garrison and Haley did not explicitly mention illegal substances during the call.

*February 18, 2018—Payment for Methamphetamine*

On February 18, 2018, Garrison called Johansen and reported Haley came to Garrison's house wanting payment for the drugs left in Garrison's truck. Garrison told Haley that he needed a couple of days to pay. Later that same day, Garrison and Johansen met to discuss paying for the methamphetamine. During the meeting, the detective instructed Garrison to call Haley on speaker phone. At the beginning of the call, Garrison stated that Haley had stopped by his home earlier wanting money. In response, Haley asked if he could call back in a few minutes but never called back. Johansen provided Garrison with $800 in case Haley showed up again asking for money and then left.

About 15 minutes later, at 2:30 p.m., Garrison called the detective telling him that Haley had called wanting to meet at Walmart. In Garrison's phone logs, Johansen found

5

an incoming call from Haley's contact at 2:29 p.m., lasting about one minute. Johansen instructed Garrison to meet the detective at a location near Walmart, where the detective provided a listening device to Garrison. The detective did not search Garrison due to time constraints and the fact that he did not expect Garrison to receive any drugs from Haley. Garrison and Johansen drove separately to Walmart for Garrison to meet Haley.

At Walmart, Johansen watched Garrison drive up to a black Volvo in the parking lot, which Johansen believed to be Haley's car. Johansen saw a black male exit the Volvo and enter Garrison's car. He was unsure if the black male was Haley, but he recognized Haley's voice while listening to the conversation. After some random conversation in Garrison's car, Johansen heard what he believed to be discussion of drugs. Johansen heard the person he believed to be Haley tell Garrison that he would front the marijuana for $450 per bag and allow Garrison to pay for it later. He heard Garrison tell Haley that in the future, he did not want to mess with "regg," which Johansen understood as referring to low-grade marijuana. Garrison told Haley that "other stuff" was easier to "get rid of" and marijuana was too much of a hassle. After the conversation ended, Johansen followed Garrison away from the scene, collected the listening device from Garrison, and discussed Haley's intent to front Garrison the marijuana for $450 per bag.

*March 10, 2018—Text Messages Regarding Marijuana Payment*

On March 10, 2018, Garrison received a text message from Haley's phone asking, "How u looking on that." Garrison asked which one he was talking about, to which he received a message saying, "broc." Johansen understood "broc" to be short for broccoli. He explained that he did not think "broc" was a common term for marijuana, but it was common to refer to illegal substances as items with the same color or texture. Garrison testified that "broc" was a term for marijuana.

Responding to the "broc" message, Garrison said he was good on that, would get the money soon, and did not want to mess with it anymore. Garrison received a message asking what day, to which he replied the following Monday or Tuesday (March 12 or 13, 2018).

*March 13, 2018—Setting up Marijuana Payment*

On March 13, 2018, Garrison received a message from Haley's phone asking: "[H]ow you looking." Garrison replied that he was free right then and asked if they could meet. Garrison received a response saying, "[G]ive me a few, in a meeting." Garrison asked how long it would be and received a response that it was almost over. Later on, Garrison received a message from Haley's phone asking to meet in Missouri to pay. The detective instructed Garrison to reply that he was not comfortable going to Missouri and preferred to meet in Atchison.

*March 14, 2018—Payment for Marijuana*

On March 14, 2018, Johansen told Garrison to text Haley's phone agreeing to meet in Missouri. Garrison received a response asking him to put the money in an envelope, seal it, and put it in a mailbox at an address Johansen believed to be Haley's mother's home. Garrison replied that he did not feel comfortable leaving the money in a mailbox and preferred to meet in person. Garrison later received a message from Haley's phone agreeing to meet at Fisca, a gas station located on the Missouri side of a bridge separating Atchison from Missouri. Johansen instructed Garrison to reply that he would meet at Fisca. Garrison testified that he followed Johansen's lead "every step of the way" when texting Haley to arrange a meeting to pay.

Later that day, Johansen met Garrison in Atchison, searched him, and gave him $450 from the sheriff's office to pay for the marijuana. Johansen then followed Garrison

7

across the bridge and noticed a black Volvo sitting in the Fisca parking lot. Johansen continued driving east into Missouri while listening to Garrison's interactions through a listening device.

Johansen heard Garrison get out of his car and speak to a female voice. The woman told Garrison that Haley had to go to St. Joseph, Missouri. Garrison did not see Haley at Fisca and testified that the woman he spoke to requested that he pay her instead.

While Johansen drove east and listened through the device worn by Garrison, Olberding—the DEA agent—surveilled the Fisca parking lot. He was set up behind a fence facing the Fisca parking lot. Olberding could see over the fence and through the cracks in the fence. Olberding was familiar with Haley, could identify him, and was familiar with Haley's car. He was "positive" of his identification of Haley despite looking through a fence. He relayed his observations over the phone to Johansen as he observed the scene.

After Olberding arrived at Fisca, a black Volvo arrived. Olberding saw Haley exit the Volvo and go inside the gas station. Olberding observed a white woman with Haley who stayed in the car. Olberding saw "an individual that resembled Mr. Haley" through the glass inside the gas station but could not tell what he was doing. He watched Haley in the gas station for 20 or 30 minutes.

Olberding then saw Garrison arrive at Fisca and watched him speak to the woman in the Volvo for a short time. He then saw Garrison re-enter his car and leave the scene. After Garrison left, Olberding watched Haley exit the gas station, get in the Volvo, and leave. After the meeting ended at Fisca, Johansen met Garrison in Atchison. Garrison told Johansen that he spoke to a white woman sitting in Haley's car whose name he did not know. The woman told Garrison that Haley had to go to St. Joseph, Missouri, and Garrison could pay her instead. Garrison paid the woman the $450.

8

The jury convicted Haley on all five counts. The district court sentenced Haley to 104 months in prison for count 1 (methamphetamine distribution), 6 months in prison for count 2 (no drug tax stamp), 49 months in prison for count 3 (marijuana distribution), 6 months in prison for count 4 (no drug tax stamp), and 11 months in prison for count 5 (possession of drug paraphernalia). The sentences for counts 1 and 2 ran consecutive, and the sentences for counts 3, 4, and 5 ran concurrent, for a controlling sentence of 110 months. The original sentencing journal entry lists count 1 and count 3 running consecutive, for a controlling sentence of 153 months. On January 5, 2024, the district court filed an amended journal entry that reflected the sentence pronounced from the bench.

ANALYSIS

I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE STATE'S EXHIBITS CONTAINING WRITTEN LABELS AND REDACTIONS

*Preservation*

On appeal, Haley challenges the State's exhibits, including Exhibits 2b, 3b, 14b, 15b, 16, 24, 25, and 26. Exhibits 2a, 3a, 14a, 15a, and 16 are photos taken by Johansen of the call logs and text messages appearing on Garrison's phone without any labels added to them. Exhibits 2b, 3b, 14b, and 15b are copies of the same photos as Exhibits 2a, 3a, 14a, and 15a, with added labels. Exhibits 24, 25, and 26 are audio recordings between Garrison and Haley.

A. *Exhibits 2b, 3b, 14b, 15b, and 16*

Haley asserts that he renewed his pretrial objections to the labels on Exhibits 2b, 3b, 14b, 15b, and 16 during trial. The State does not contest preservation. Still, a review

9

of the record raises preservation questions about Exhibits 2b and 3b. When the State moved to admit Exhibits 2a and 2b simultaneously, Haley objected for lack of foundation. Haley did the same when the State moved to admit Exhibits 3a and 3b simultaneously. Yet when the State moved to admit Exhibits 14a and 14b simultaneously, Haley objected "to foundation and the markings on State's Exhibit No. 14b." Similarly, when the State moved to admit Exhibits 15a and 15b simultaneously, Haley objected to both exhibits on foundation and to the markings on Exhibit 15b. It appears, therefore, that defense counsel distinguished between objections for lack of foundation to both exhibits being offered and objections to the labels contained on the exhibits.

A contemporaneous specific objection at trial is required to preserve an evidentiary claim for review. K.S.A. 60-404; *State v. Hillard*, 313 Kan. 830, 839, 491 P.3d 1223 (2021). A party cannot object at trial to the admission of evidence on one ground and then argue a different ground on appeal. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020). Here, Haley has failed to preserve his challenges to Exhibits 2b and 3b for appeal. Thus, we limit our review to Exhibits 14b, 15b, and 16.

B.      *Exhibits 24, 25, and 26*

Exhibit 24 is an audio excerpt of Garrison's 50-minute conversation with Haley at Garrison's home on February 12, 2018. It contains Garrison asking Haley about "white" and "green." Exhibit 25 contains excerpts of Garrison's conversation with Haley on February 18, 2018, when Garrison paid Haley for the methamphetamine. Exhibit 26 is an audio recording of Garrison paying for the marijuana at the Fisca gas station on March 14, 2018. It reveals Garrison speaking with the woman sitting in Haley's car while Haley was seen inside the gas station.

Haley argues on appeal that "the audio labels drew conclusions about where these conversations occurred." But the descriptive labels on the audio disks do not reference

the location where they occurred. Each audio disk contains descriptive labels written by law enforcement based on what they recalled the conversations to be about. The labels are as follows:

- Exhibit 24: "First Meeting"
- Exhibit 25: "Cash Delivery"
- Exhibit 26: "Marijuana Payment"

Haley correctly states that he preserved his challenges to Exhibits 24, 25, and 26 by objecting to the descriptive labels contained on those audio disks before trial and renewing those objections during trial. The State does not contest preservation, nor does it address the labels on Exhibits 24, 25, and 26 at all.

On appeal, Haley challenges different exhibit labels than those he objected to at the district court. In his brief, Haley describes that law enforcement wrote the labels on Exhibits 24, 25, and 26 that he is challenging. Yet the labels Haley challenges are different from those he objected to at the district court. On appeal, Haley cites the erroneous labels:

- Exhibit 24: "Larry initially meeting with D"
- Exhibit 25: "Meeting at Wal-Mart"
- Exhibit 26: "Meeting at Fisca"

These descriptions are from the list of trial exhibits the State submits. The record does not convey the jury reviewed the list of trial exhibits during deliberations. The trial transcript makes clear the discrepancy between Haley's objections at the district court and the labels he challenges on appeal. For instance, the district court told the jury it would receive a verdict form, the jury instructions, and "the evidence available to review."

11

Therefore, it is not clear that the jury would have reviewed the trial exhibits list. We therefore do not consider Haley's challenges to Exhibits 24, 25, and 26.

*Standard of Review*

"'The question of whether evidentiary foundation requirements have been met is left largely to the discretion of the district court. Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view.'" *State v. Hillard*, 315 Kan. 732, 762, 511 P.3d 883 (2022).

*Analysis*

The proponent of evidence is required to lay a foundation before an exhibit can be admitted into evidence. No evidentiary statute requires foundation for documents or other exhibits. "Foundation refers to '"preliminary questions designed to establish that evidence is admissible."' Providing an adequate foundation prevents the finder of fact from being exposed to inadmissible evidence. [Citations omitted.]" *State v. Banks*, 306 Kan. 854, 865-66, 397 P.3d 1195 (2017).

A.　　*Labels on Exhibits 14b, 15b, and 16*

Exhibits 14b, 15b, and 16 are photos taken by Johansen of the call logs and text messages appearing on Garrison's phone. The exhibits are labeled as follows.

- Exhibit 14b:  Calls to and from "Detrick Haley" contact on February 18, 2018, labeled as "Incoming call from Haley's Cell" and "Outgoing call to Haley's Cell."

- Exhibit 15b: General call log from February 18, 2018, with a call from Haley's number labeled as "Incoming call from Haley's Cell," and calls from Johansen's number labeled as "Incoming Call from Johansen's Cell."
- Exhibit 16: Text messages with "Detrick Haley" contact on March 6 and March 10, 2018, labeled as "Text from Haley's Cell." Some messages are redacted.

Haley claims that these exhibits were admitted without the proper foundation laid for the labels and redactions the State added. He argues that "by admitting exhibits with pre-existing conclusions into evidence, the district court allowed the State to improperly extend into the fact finder's role." He submits that although the State presented circumstantial evidence supporting Johansen's conclusions that the phone numbers displayed in the exhibits were Haley's phone numbers, the State did not show a direct link identifying Haley as the person making the calls and sending the text messages. Haley also asserts that Johansen did not explain how he independently confirmed that the number saved as Haley's contact in Garrison's phone was linked to Haley.

As for Exhibit 16, Haley submits that while Johansen agreed with the State that the redactions were irrelevant, the jury should have been allowed to draw its own conclusions on whether the messages were relevant to the conversation at issue. He suggests that "[t]he cell phone labels drew a simple, but critical conclusion: that Haley was the individual who was calling and messaging Garrison using the phone number indicated in [Garrison's] contact."

The State responds that because Johansen was familiar with the photos and testified that the notes added by the State were fair and accurate, it laid the proper foundation for the labels on the exhibits. The State points out that it admitted Exhibits 14a and 15a without any markings and contends that admitting the exhibits with labels added made it easier for the jury to understand the call logs and messages. The State

13

submits that the jury rejected the argument that Haley was not the person using the phone number saved as "Detrick Haley" in Garrison's phone. The State also argues that because the jury had the original photos without labels added, it could accept or reject the labels for itself.

Before trial, Haley filed a motion in limine, in part seeking an order preventing the State from introducing "[e]vidence of any text messages to or from the Defendant not specifically associated with the alleged criminal activity that occurred on February 16, 2018." During the motion hearing, Haley objected to the notes contained on the State's photo exhibits purporting to indicate from whom the messages were sent. Haley stated: "I think that invades the province of the jury. I think the jury can look at the exhibit and determine what it says and what weight to give it. I don't think that labeling it in that fashion is appropriate."

The State responded that the notes were meant to help the jury understand the exhibits. The State explained that there would be testimony at trial that Garrison's phone was the one shown in the photos and that the phone number Garrison was contacting was connected to Haley. The prosecutor discussed that "I did label in there this text was from the c.i. [confidential informant], this text was from the defendant. I can put defendant's cell phone if the Court would like."

The district court concluded it was more appropriate to label the text messages as "from the phone, unless there's a specific identification of the defendant or the c.i. In other words, it would be from the c.i.'s phone or from the defendant's phone. The jury can make their own determination as to who the author of those messages are." The court allowed labeling the exhibits "as to that the message is from the phone of whoever it's from, c.i., Dedrick Haley. Then both parties can argue. [The State] can argue that he made the message. [Defense counsel] can argue that anybody could make that message from that phone, that it's not necessarily him."

14

At trial, Exhibits 14b, 15b, and 16 were all offered and admitted into evidence during Johansen's testimony. Exhibits 14b and 15b were offered and admitted into evidence simultaneously with Exhibits 14a and 15a.

The State questioned Johansen about Exhibits 14a and 14b. Johansen identified the exhibits as photos he had taken of Garrison's phone. Johansen said Exhibit 14a was fair and accurate, as were the notes on Exhibit 14b. The State then moved to admit Exhibits 14a and 14b. Haley objected "to foundation and the markings on State's Exhibit No. 14b," which the district court overruled.

Johansen then identified Exhibits 15a and 15b as photos of Garrison's phone. Johansen said both exhibits were fair and accurate and the additional notes on Exhibit 15b were fair and accurate. The State moved to admit both exhibits into evidence. Haley objected to both exhibits on foundation and to the markings on Exhibit 15b. The district court overruled the objections.

1.    *Foundational Challenges to Calls and Text Messages in Kansas Courts*

Kansas courts have considered foundational challenges to evidence of text messages and phone calls based on the identity of the sender or caller. In *State v. Schuette*, 273 Kan. 593, 44 P.3d 459 (2002), *disapproved of on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), Schuette was convicted of criminal threats he made during a phone call to the victim. At trial, the victim's caller ID records were admitted into evidence. The caller ID showed calls from the same phone number as that listed for Schuette in phone directories. On appeal, Schuette challenged the caller ID evidence, arguing that the district court failed to require foundation. Our Supreme Court found that because the victim testified that he heard Schuette's voice on the phone and

Schuette's phone number appeared on the caller ID screen, there was sufficient foundation to admit the caller ID evidence. 273 Kan. at 598.

*State v. Coones*, 301 Kan. 64, 339 P.3d 375 (2014), involved a similar foundational challenge to caller ID evidence. There, in a murder trial, photos of the victim's mother's caller ID screen were admitted at trial. The caller ID screen identified an incoming call as originating from the victims' home phone number and listed the caller as one of the victims. The victim's mother testified that she knew the victim's voice and recognized the voice on the phone as the victim's. But the mother's phone records showed a different originating phone number. On appeal, Coones argued that trial counsel was ineffective for failing to object to the caller ID evidence. The *Coones* court concluded that there was sufficient foundation to admit the caller ID evidence. While the court noted that the other victim's name and phone number appeared on the caller ID screen, it found that the discrepancy between the caller ID screen and the phone record did not render the caller ID evidence inadmissible. 301 Kan. at 73.

Furthermore, in *State v. Winder*, No. 98,036, 2008 WL 3367575 (Kan. App. 2008) (unpublished opinion), Winder challenged the authentication of a witness' testimony regarding text messages sent by Winder. The witness testified that he saved Winder's phone number in his phone and identified the contact as "Rocky," Winder's first name. 2008 WL 3367575, at *4. The witness testified that Winder sent him text messages and testified regarding the substance of the messages. Before trial, the witness lost his phone and could not produce his phone or the messages he testified about, however, a police officer saw the messages on the witness' phone and copied them in his police report. The officer also testified about Winder's text messages. Winder claimed that the witness' testimony established that while the text messages came from Winder's phone, the message did not properly identify him as the actual sender. The panel found that the State laid sufficient foundation to show that Winder himself sent the messages because the State established that the messages came from Winder's phone and one message

16

referenced a prior conversation between Winder and the witness. The messages therefore "circumstantially established that Winder sent the messages." 2008 WL 3367575, at *4.

These cases show that evidence purporting to show whose cellphone calls or texts originated from can be authenticated with evidence confirming who the number is associated with, recognizing the speaker on the phone, or when messages mirror the person's conduct. Here, Garrison saved the phone number used to contact Haley under Haley's name in his phone. Johansen testified that he independently verified that the phone number saved as Haley's contact was associated with Haley. He also testified that the labels contained on the exhibits were fair and accurate. The call logs in Exhibits 2b and 14b show calls to and from Haley's contact in Garrison's phone with Haley's name displayed at the top of the screen. The call logs in Exhibits 3b and 15b are not specific to calls to and from Haley's contact in Garrison's phone, but the labels on the exhibits signifying calls to and from Haley's cell are listed under the same phone number saved as Haley's contact. The text messages shown in Exhibit 16 are also texts to and from Haley's contact with Haley's name shown at the top of the screen.

Furthermore, the Kansas Supreme Court has concluded that where the content of text messages "parallels" the defendant's activities and statements, the "evidence reasonably implies" that the defendant sent the text messages at issue. *State v. Franklin*, 280 Kan. 337, 342, 121 P.3d 447 (2005). Here, photos of the text messages and phone calls shown in the exhibits were taken of Garrison's phone by Johansen. Exhibit 22 showed a text message from Haley's phone number suggesting meeting at Fisca on March 14. Johansen and Olberding both testified that they saw the black Volvo connected to Haley at Fisca during the meeting to pay for the marijuana. Olberding also testified that he saw Haley exit the black Volvo and saw Haley inside the Fisca gas station while Garrison was paying for the marijuana. Johansen was also able to recognize Haley's voice during phone calls to the phone number saved as Haley's contact in Garrison's phone. Finally, Johansen testified to the timeline of the phone calls between Garrison and Haley

17

that was consistent with the call logs and labels shown in Exhibits 14b and 15b. We find the district court's decision that the State laid a proper foundation for the labels was not an abuse of discretion such that no reasonable person would reach the same conclusion.

B.      *Redactions on Exhibit 16*

Exhibit 16 is a photo of Garrison's phone showing a text message conversation with Haley's contact in Garrison's phone. The exhibit shows messages from both individuals dated March 6, 2018, and March 10, 2018. All of the messages dated March 6 are redacted. A message from Haley's phone sent on March 10, 2018, said, "How u looking on that." Garrison's response is redacted. The exhibit shows the response from Haley's phone, which said, "I was talking on the other thing." During trial, Johansen identified Exhibit 16 as a photo he had taken of Garrison's phone. He agreed with the State that the redacted messages were irrelevant. He said the photo was otherwise fair and accurate.

On appeal, Haley argues that the jury should have been allowed to decide for itself whether the redacted messages were relevant.

In *State v. Robinson*, 303 Kan. 11, 363 P.3d 875 (2015), the State presented emails with the headers redacted as evidence. The redacted header information showed that the emails were forwarded to the State by a witness. Robinson argued that the email exhibits were unreliable because of the redactions. The witness who forwarded the emails testified that the redacted versions were true and accurate copies of the original emails. The content of the emails was identical in the redacted and unredacted versions. The *Robinson* court concluded that "Robinson's arguments founded on immaterial, technical deviations in the writings failed to establish a genuine issue as to their accuracy. Such arguments went to the weight, not the admissibility, of the evidence." 303 Kan. at 230. But see *State v. Magallanez*, 290 Kan. 906, 922-23, 235 P.3d 460 (2010) (finding district court

18

erroneously excluded part of letter from victim where victim admitted to the defendant she lied about her sexual history because letter was material and probative regarding victim's capacity to lie, which was germane to defense's theory victim had lied).

The difficulty with this case compared to *Robinson* is that the unredacted version of Exhibit 16 does not appear in the record. Thus, the only information suggesting what was contained in the redacted messages was the State's claim during the motion in limine hearing that the messages were about subsequent drug sales.

Without the unredacted version of Exhibit 16, we cannot determine whether the content of the redacted messages could have been used as exculpatory or impeaching evidence. "An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, a reviewing court presumes that the action of the trial court was proper." *State v. Richard*, 252 Kan. 872, 874, 850 P.2d 844 (1993). Accordingly, the district court did not abuse its discretion in allowing the redacted Exhibit 16 into evidence.

II.     THE DISTRICT COURT DID NOT COMMIT CLEAR ERROR IN DECLINING TO ISSUE A CAUTIONARY INSTRUCTION ON THE CONFIDENTIAL INFORMANT'S TESTIMONY

*Preservation*

Haley claims he preserved this issue by requesting PIK Crim. 4th 51.100 (2020 Supp.)—the cautionary instruction on testimony by confidential informants—during trial. The State responds that because Haley failed to object to the omission of a cautionary instruction, this issue is unpreserved and therefore subject to a clear error analysis. The State contends that under *State v. Brammer*, 301 Kan. 333, 339-41, 343 P.3d 75 (2015), courts distinguish between requests for jury instructions and objections to jury instructions when examining preservation of instructional error claims.

19

The State is correct that *Brammer* distinguishes between requests and objections for purposes of instructional error preservation. However, the *Brammer* court specifically held that a written request for a jury instruction submitted before trial was insufficient to preserve an instructional error claim without a contemporaneous objection. 301 Kan. at 341.

Here, Haley requested the PIK Crim. 4th 51.100 cautionary instruction during an instructions conference on the second day of trial. The State objected to that instruction, and the district court later ruled on all jury instructions, including Haley's requested PIK Crim. 4th 51.100 instruction. The court denied Haley's request for the instruction but specifically told counsel that the court noted the defense's request for the instruction. We therefore find this issue preserved for appeal.

*Standard of Review*

When analyzing jury instruction issues, appellate courts follow a three-step process:

> "'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
> (2) considering the merits of the claim to determine whether error occurred below; and
> (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.'" *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

Because Haley did preserve this issue, we must determine whether the instruction at issue was legally and factually appropriate, using an unlimited review. *State v. Shields*, 315 Kan. 814, 820, 511 P.3d 931 (2022); *Holley*, 313 Kan. at 254. In deciding whether an instruction was factually appropriate, we must determine whether there was sufficient evidence, viewed in the light most favorable to the requesting party, to support the instruction. 313 Kan. at 255.

20

Under the third step of examining reversibility, our analysis depends on whether the issue is preserved. If the issue is preserved, we use a harmless error analysis. Under this analysis, if the instructional error impacts a constitutional right, we determine "'whether there was "no reasonable possibility" that the error contributed to the verdict.'" See 313 Kan. at 256-57.

*Analysis*

Haley contends that a cautionary instruction for Garrison's testimony was both legally and factually appropriate. He argues that because Garrison signed a contract with the sheriff's office and received a benefit by avoiding prosecution for his own potential drug offenses, Garrison was an informant for PIK Crim. 4th 51.100 purposes.

Haley also asserts that Garrison's testimony was not substantially corroborated. He submits that although Johansen and Olberding surveilled events at several locations and documented their observations, there were conversations between Haley and Garrison that were not recorded and Garrison's phone was never equipped with a recording device.

The State responds that because Garrison's testimony was substantially corroborated, no error occurred in omitting the cautionary instruction. The State points to several instances of corroboration by Johansen, including Johansen's independent investigations of Haley, the photos Johansen took of Garrison's cellphone, and the conversations Johansen observed and recorded between Garrison and Haley.

The Kansas Supreme Court held that a district judge is not obligated to "give a cautionary instruction on informant testimony absent evidence that a witness is acting as an agent for the State in procuring evidence." *State v. Lowe*, 276 Kan. 957, Syl. ¶ 5, 80 P.3d 1156 (2003). "[O]rdinarily it is error to refuse to give a cautionary instruction on the testimony of a paid informant or agent where such testimony is substantially

21

uncorroborated and is the main basis for defendant's conviction." *State v. Novotny*, 252 Kan. 753, 760, 851 P.2d 365 (1993).

PIK Crim. 4th 51.100, Informant Testifying in Exchange for Benefits, provides: "You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence." An informant is a person ""who confidentially discloses material information of a law violation, thereby supplying a lead to officers for their investigation of a crime.'" . . . [T]his definition does not include a person who supplies information after being interviewed by police officers, or who gives information as witnesses during the course of investigation." *State v. Kuykendall*, 264 Kan. 647, 654, 957 P.2d 1112 (1998).

In examining the circumstances under which an informant instruction should be given, our Supreme Court has noted "that an informant acts as an undisclosed agent for the State when he or she acts to obtain evidence against the defendant in exchange for benefits from the State." *State v. Saenz*, 271 Kan. 339, 347-48, 22 P.3d 151 (2001). Here, Johansen contacted Garrison and asked Garrison about acting as an agent for the State to obtain evidence against Haley. Garrison's criminal case was never charged. Garrison was an agent for the State. The State does not dispute that Garrison was an informant. Either as an informant or as an agent, for PIK Crim. 4th 51.100 purposes, the instruction was factually appropriate.

*Substantial Corroboration in Kansas Courts*

Kansas courts have considered whether an informant's testimony was substantially corroborated to justify omitting a cautionary instruction in several cases. In *Novotny*, the court determined that the informant's testimony was substantially corroborated and the district court did not err by failing to give cautionary instruction. The court relied on the

facts that (1) police had given the informant the drug purchase money; (2) police searched the informant to ensure he did not have drugs; (3) police watched the informant enter Novotny's home; (4) police recorded the conversation inside Novotny's home; and (5) the informant entered Novotny's home with money and no drugs and exited the home with drugs and no money. 252 Kan. at 759-60.

In contrast, here, Garrison was the only person who had physically spoken with Haley. Although Johansen was present during the initial meeting between Garrison and Haley on February 12, 2018, at Garrison's home, he had to watch through the window of Garrison's home and listened to the 50-minute conversation using an audio recorder.

Before that meeting, Johansen saw a black Volvo arrive at Garrison's home and saw Garrison get into the Volvo, but Johansen could not see inside the Volvo. On February 16, 2018, Johansen found a car matching a black Volvo description at Haley's house. Johansen ran the license plate on the Volvo and found that it was registered to Dedrick Haley and/or Gold Mine Investments, a company of which Haley was an officer.

Additionally, after Garrison informed Johansen that he had set up a meeting with Haley at Garrison's home on February 16, 2018, Johansen went to Garrison's home before the scheduled meet-up. Johansen left the house at 11:30 a.m.; Garrison called at 12:07 p.m., telling Johansen that Haley had just called and said he would put the "items" in Garrison's truck, lock the truck, and put the key under a brick. From these events, the record reflects that Johansen did not have independent knowledge of the phone call Garrison had described; Johansen was not present, and the call was not recorded. Johansen could not definitively say Haley himself made that phone call.

Further, Johansen told Garrison to stay away from his home until Johansen could search the truck. At Garrison's home, Johansen found the key to Garrison's truck under a brick behind the truck. Inside Garrison's truck, Johansen found methamphetamine and

marijuana. Johansen had not searched Garrison's truck before the drug placement. Johansen did not have independent evidence of who put the drugs in Garrison's truck; there was no photo, video, or forensic evidence taken from the scene. Johansen admitted that much of his story relied on Garrison's version of events. In other words, Garrison's testimony was "the main basis for defendant's conviction." See 252 Kan. at 760.

On February 18, 2018, Garrison called Johansen and told him Haley had come to his house wanting payment for the drugs. Johansen met with Garrison to give him the payment for Haley. After Johansen left that meeting, Garrison reported that Haley called wanting to meet at Walmart. Johansen and Garrison drove to Walmart. Johansen observed the meeting at Walmart, where he saw a black Volvo arrive and watched a black male get out of the Volvo and enter Garrison's car, but the detective could not visually verify that the person he saw was Haley.

Viewed in a light most favorable to Haley, the requesting party, Haley's requested jury instruction was legally appropriate. See *Holley*, 313 Kan. at 255. The district court erred by not including a cautionary jury instruction on the testimony of Garrison.

*Applying Harmless Error*

Because Haley's requested jury instruction was legally and factually appropriate, we review Haley's jury instruction claim under the nonconstitutional, or statutory, harmless error standard under K.S.A. 2023 Supp. 60-261. Under this standard, "the party benefitting from the error . . . must show there is no reasonable probability the error affected the trial's outcome in light of the entire record." *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

To begin, even without the cautionary instruction, the jury heard how Johansen closely collaborated with Garrison during the investigation. At trial, Johansen testified

24

how he spoke often with Garrison, looked into Garrison's phone for call logs and text messages, and found that Garrison immediately relayed any calls from Haley's phone to him. Johansen was present during phone calls and text messages where Garrison and Haley arranged meet-ups to pay for the drugs, and Johansen was present during the February 16, 2018 phone call after the drugs were placed in Garrison's truck.

Admittedly, Johansen did not see or listen to the actual drug placement in Garrison's truck on February 16, 2018. Johansen was away from Garrison's home and had searched Garrison's person but not Garrison's home or truck. The circumstances of the drug placement raise questions, though importantly, as noted above, Johansen was present when Haley confirmed over the phone that he had left the key to Garrison's truck where Johansen found it. Garrison and Haley also discussed future payment on that call, and Johansen arranged and was involved with both drug payments. And, as described above, Johansen often directed Garrison in responding to and calling Haley on the phone. The photos of Garrison's phone showing calls and text messages to and from Haley's phone were taken by Johansen.

Olberding testified that he surveilled the March 14, 2018 meeting at Fisca from behind a fence near the parking lot. He was familiar with Haley and could identify him. At Fisca, Olberding saw a Volvo arrive, saw Haley exit the Volvo, and observed "an individual who resembled Mr. Haley" go inside the gas station for 20 or 30 minutes. Olberding saw Garrison arrive at Fisca and talk to a woman, after which Garrison re-entered his car and left the scene. After Garrison left, Olberding saw Haley exit the gas station, enter the Volvo, and leave the scene. Despite observing the scene through a fence, Olberding was "positive" of his identification of Haley.

Finally, the district court provided the jury with Instruction No. 3, the witness credibility instruction, which stated: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and

25

experience in regard to the matter about which a witness has testified." This instruction directed the jury to determine how much weight to afford the testimony of Garrison, an informant, and Johansen and Olberding, the investigating law enforcement agents, and to use their common knowledge and experience regarding the witnesses' testimony. See *State v. Grubbs*, 242 Kan. 224, 229, 747 P.2d 140 (1987); PIK Crim. 4th 51.060 (2020 Supp.).

Our review of the record shows that there is no reasonable probability that the failure to caution the jury with an informant instruction affected the trial's outcome in light of the entire record. The district court's failure to provide the cautionary instruction was harmless error.

III.     WE REVIEW WHETHER THE DISTRICT COURT ERRED IN DETERMINING THE STATE DID NOT VIOLATE THE PRETRIAL DISCOVERY RULE

*Preservation*

On appeal, Haley alleges the State violated *Brady* by withholding three pieces of evidence:  (1) an audio recording turned over after trial labeled "3-02-18 Audio 2"; (2) an audio recording turned over after trial labeled "Haley Contact #1 03-01-2018"; and (3) a report by Olberding of his surveillance of a March 2, 2018 meeting between Garrison and Haley. Haley says he preserved these claims with his motion for a new trial at the district court.

The State responds that Haley only raised the alleged suppression of State's Exhibit 24—an audio excerpt from the February 12, 2018 meeting between Garrison and Haley at Garrison's home containing the "white" and "green" references. According to the State, Haley preserved no other suppression claims. Contrary to the State's claim, the record shows that Haley raised the alleged suppression of the four audio recordings

26

turned over after trial. And in his motion for a new trial, Haley alleged that the State failed to disclose a copy of Exhibit 24 before trial. The district court found that the State did not withhold exculpatory evidence and denied the motion for a new trial.

*Standard of Review*

> "A trial court's determination as to the existence of a *Brady* violation is reviewed de novo with deference to the trial court's findings of fact, but the trial court's denial of the defendant's motion for new trial is reviewed under an abuse of discretion standard. A trial court abuses its discretion when it applies an incorrect legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *State v. Warrior*, 294 Kan. 484, Syl. ¶ 13, 277 P.3d 1111 (2012).

*Analysis*

In determining whether there has been a *Brady* violation, there are three components that we consider: "'(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.'" *State v. Breitenbach*, 313 Kan. 73, 97, 483 P.3d 448 (2021). Evidence is not suppressed if it was previously disclosed through other means aside from the discovery process. *State v. DeWeese*, 305 Kan. 699, 711, 387 P.3d 809 (2017). Evidence is material if there is a reasonable probability that the suppressed evidence would have resulted in a different outcome at trial. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation omitted.]'" *Breitenbach*, 313 Kan. at 97.

A.    *The Olberding report*

Contrary to Haley's claim, the record shows that he failed to preserve his *Brady* claim regarding the Olberding report. He did not mention the report in his motion for a new trial, nor did he raise suppression of the report during the motion hearing.

Issues not presented to the district court generally cannot be raised on appeal. There are three exceptions to this rule:  "'[T]he newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; . . . consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights'"; or the trial court was right for the wrong reason. *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019).

Under Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36), an appellant is required to explain why an issue that was not raised in district court should be considered for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Haley does not argue that any of the three exceptions to the preservation rule apply to his *Brady* claim on the Olberding report. Thus, we will not review this claim.

B.    *"Audio from Meeting with Haley to Arrange Further" Recording*

Haley claims the recordings of conversations between Haley and Garrison, including the "Audio from Meeting with Haley to Arrange Further" turned over after trial, were favorable because they contained "unremarkable conversations about mutual friends and politics." He asserts the conversations "weigh against the 'business relationship' that the State attempted to portray"; therefore, they could have been used to impeach Garrison. He argues that the recordings were suppressed despite the State's claim that they were available under its open file policy. He claims that "given the number of times these documents were requested and ordered produced, it is not

28

reasonable for the State to rely on this policy to evade its positive duty to provide evidence."

Haley argues there is a reasonable probability of a different result if the State had produced the recordings: "Without the additional recordings, Haley was not able to connect the different pieces of this investigation. This could have been used for impeachment purposes, as exculpatory evidence, or even as inculpatory evidence that may have affected his decisions through the proceedings." He also argues that because "additional information had been collected in a case where every piece of evidence was important," the State's failure to produce the evidence "undermined confidence in the outcome."

The State appears to have argued the wrong audio recording in its brief. The State argues that the district court correctly found that the State did not suppress Exhibit 24. But Haley does not argue on appeal that the State violated *Brady* by suppressing Exhibit 24, but merely that it mislabeled it. The State's brief does not address Haley's *Brady* claim regarding the "Audio from Meeting with Haley to Arrange Further" recording.

One month after trial, Haley filed a motion for discovery requesting production of "the surveillance tape taken of the Defendant during an undercover operation conducted on March 2, 2018." The State then unilaterally produced four audio recordings—including the "Audio from Meeting with Haley to Arrange Further" recording—along with transcripts of the recordings and three reports by Olberding.

### 1.    *Favorability*

To be favorable under *Brady*, evidence must be exculpatory or impeaching. *Breitenbach*, 313 Kan. at 97. As Haley suggests, much of the "Audio from Meeting with Haley to Arrange Further" recording is random conversation between Garrison and Haley

29

about mutual friends and politics. However, at the beginning of the recording, a voice says: "This is March 2nd, 2018, doing a controlled buy with [Dedrick] Haley." Later in the recording, the following exchange occurs:

> "[Garrison]: My neighbor's got me little—I don't like that sheriff pulling over in his driveway [all] the time. So . . .
>
> "[Haley]: Huh?
>
> "[Garrison]: In the future, if you pick a different spot, [indiscernible] you pick, but I don't really think I want to do my driveway [indiscernible] I don't know. Let you know. He in there and I think they're friends or whatever, but I don't need to see anybody that's being clear, you know.
>
> "[Haley]: Yeah.
>
> . . . .
>
> "[Haley]: Well, let me ask you this. You ain't doing nothing wrong in this area; do you?
>
> "[Garrison]: No, but I don't want to be seen in your vehicle or anybody else's vehicle there.
>
> "[Haley]: Yeah.
>
> "[Garrison]: Just period. It's probably nothing. Probably like probably, probably fucking friends [indiscernible]."

In the recording, Garrison also makes the following comment:

> "Well, I just as soon—[indiscernible], that Brock, you know. I'm going to bail out from that. I know I told you I was going to do that for [indiscernible]. You know, but I'm just—I'm bailing out. This other shit takes up less space, less odor, easiest fucking move. I just got to get you [indiscernible]. But, you know, whatever. If you can do that for me in the near future, that's fine."

The term "Brock" as recorded in the transcript likely refers to the term "broc" as shown in Exhibit 17 in a text message Garrison received from Haley's phone. As the transcript shows, much of the recorded audio was random conversation. But the recording

also contains exchanges appearing to refer to drug activity. This is comparable to the other recordings played during trial. For example, Exhibit 24 was a 24-second excerpt from a 50-minute recording containing random conversation mixed with discussion of drugs. Additionally, Exhibit 25 was three short excerpts of a 16-minute recording also containing some random conversation mixed with discussion of payment for drugs. Given that, the impeachment value of the "Audio from Meeting with Haley to Arrange Further" recording is questionable.

## 2. *Suppression*

To be a violation under *Brady*, the State must have suppressed the evidence at issue either willfully or inadvertently. *Breitenbach*, 313 Kan. at 97. During the hearing on the motion for a new trial, the State argued that it did not suppress any evidence due to its open file policy. Although the State failed to brief the "Audio from Meeting with Haley to Arrange Further" recording, it claims that it made two copies of all evidence and allowed defense counsel access to review the entire file. At the hearing, defense counsel agreed that he had not been refused disclosure when requested, nor was he denied access to the State's files. He also acknowledged he had opportunities to inspect the State's file and compare it with his own. The district court found that the State did not withhold exculpatory evidence.

A search of Kansas cases did not reveal a clear answer on whether an open file policy by the State necessarily means evidence was not suppressed under *Brady*. However, other courts have considered the issue and ruled that when the evidence at issue appeared in the prosecution's file, the prosecution's open file policy satisfied *Brady*. See *Adams v. State*, 271 Ga. 485, 487, 521 S.E.2d 575 (1999); *Vega v. State*, 898 S.W.2d 359, 362 (Tex. Ct. App. 1995). But see *Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801, 828 (10th Cir. 1995) ("While an 'open file' policy *may* suffice

to discharge the prosecution's *Brady* obligations in a particular case, it often will not be dispositive of the issue.").

We follow other state courts in finding an open file policy satisfactory under *Brady* when the evidence at issue appears in the file. Here, while the district court did not make a specific finding on whether the audio recordings produced after trial appeared in the State's file, the district court impliedly found that the "Audio from Meeting with Haley to Arrange Further" recording was contained in the State's file when it found that the State did not withhold exculpatory evidence. We agree and find the court correctly concluded that the State did not suppress the "Audio from Meeting with Haley to Arrange Further" recording.

3.      *Materiality*

Under *Brady*, suppressed evidence must be material. Evidence is material if there is a reasonable probability that the suppressed evidence would have resulted in a different outcome at trial. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citation omitted.]'" *Breitenbach*, 313 Kan. at 97.

As noted previously, Haley contends that the "Audio from Meeting with Haley to Arrange Further" recording could have been used for impeachment to attack the State's characterization of a business relationship between Garrison and Haley. Yet the recording is similar to other recordings played at trial—such as Exhibit 24 and Exhibit 25—that were excerpted from larger recordings containing friendly conversation mixed with discussions of drug transactions.

Moreover, during trial, Haley attacked the State's portrayal of a drug-related business relationship on cross-examination of both Johansen and Garrison. The extraction report from Haley's phone showed a text message sent to Garrison, saying: "I got a

person there to get money for the car." Haley cross-examined Johansen and Garrison based on Garrison's history of selling car parts in an effort to portray the relationship between Garrison and Haley as revolving around car part sales rather than drugs.

The fact that the "Audio from Meeting with Haley to Arrange Further" recording contained some friendly conversation is unlikely to create a reasonable probability of a different outcome in the trial. This is particularly so given that the recording also contained some references to drug activity and the jury believed Garrison and Haley had a drug-related relationship.

C. *"Haley Contact #1 03-01-2018" Recording*

The "Haley Contact #1 03-01-2018" recording is a phone call between Garrison and Haley where Haley says he is "just pulling up to St. Joe" in Missouri. It was one of the four audio recordings produced in response to Haley's posttrial motion for discovery.

Haley claims the "Haley Contact #1 03-01-2018" recording is favorable because it could have been used to establish an alibi. He claims that although the recording is labeled as being captured on March 1, 2018, it was captured on February 16, 2018. He does not cite to the record for this claim. Given that February 16 was the day the State alleged that Haley placed the methamphetamine and marijuana in Garrison's truck in Atchison, Haley asserts that this recording could have been used to establish his presence in Missouri on that day. Haley argues that given the number of times recordings were requested and ordered produced, it was unreasonable for the State to rely on its open file policy as a defense to a suppression claim. As noted previously, Haley argues generally that the recordings only being turned over after trial affected his ability "to connect the different pieces of this investigation" and that the recordings could have been used for impeachment, exculpatory evidence, or inculpatory evidence that would have affected his trial decisions.

33

The State counters that Haley's claim that the "Haley Contact #1 03-01-2018" was actually captured on February 16, 2018, has no support in the record. Because there is no support in the record and Haley makes this claim for the first time on appeal, the State urges us not to consider this claim. The State also notes that during the hearing on the motion for a new trial, Haley conceded that the recording would not have been admissible at trial because it contained K.S.A. 60-455 bad acts evidence, which the district court had prohibited at trial.

### 1. *Favorability*

Haley claims for the first time on appeal and without a citation to the record that this recording was instead captured on February 16, 2018, not on March 1, 2018, as labeled. If true, the recording could establish that Haley was present in St. Joseph, Missouri, at some point on the day the State alleged he placed drugs in Garrison's truck in Atchison.

Haley's argument asks us to be a fact-finder. Appellate courts, however, "'do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Additionally, Haley fails to provide any support for that claim. "'[A]n argument that is not supported with pertinent authority is deemed waived and abandoned.'" *State v. Liles*, 313 Kan. 772, 784, 490 P.3d 1206 (2021); see Supreme Court Rule 6.02(a)(4) (2024 Kan. S. Ct. R. at 36) ("The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal."). Therefore, we will not decide Haley's claim that the "Haley Contact #1 03-01-2018" recording was captured on February 16, 2018.

2. *Suppression*

As noted previously, during the hearing on the motion for a new trial, the State argued that it did not suppress any evidence due to its open file policy. While the district court did not make a specific finding that the audio recordings produced after trial were contained in the State's file, the district court found that the State did not withhold exculpatory evidence. As stated above, we follow other courts in finding an open file policy satisfactory under *Brady* when the evidence appears therein. We affirm the district court's ruling that the State did not suppress the "Haley Contact #1 03-01-2018" recording.

3. *Materiality*

Haley contends that if the "Haley Contact #1 03-01-2018" recording was captured on February 16, 2018, it could have been used to establish an alibi since February 16 was the day the State alleged that Haley placed methamphetamine and marijuana in Garrison's truck in Atchison when Haley told Garrison he was in St. Joseph.

During trial, Johansen testified that he had not searched Garrison's truck for drugs before the drug placement in his truck. When Johansen left Garrison's house after Haley had not shown up, he saw Garrison walking down the steps of the house as if he were leaving. On cross-examination, Johansen admitted that he did not actually see Garrison leave the house. Johansen also admitted that he did not actually know what Garrison and Haley said during the phone call where Garrison alleged that Haley advised that he would leave the drugs in Garrison's truck. He also admitted that he could not definitively say that Haley himself made that phone call to Garrison. On cross-examination, Haley elicited further testimony from Johansen that he did not have independent evidence that Haley placed the drugs in Garrison's truck and that it was possible Garrison placed the

drugs there. Johansen admitted that there was no photo, video, or forensic evidence showing Haley placed the drugs in Garrison's truck.

The State presented evidence countering the defense that Haley did not place the drugs in Garrison's truck and may not have been at the scene. After Johansen searched Garrison's truck and found the drugs, he directed Garrison to call Haley about the entire incident. During that call, which Johansen recorded, Johansen recognized Haley's voice from listening to the initial conversation between Garrison and Haley on February 12. Johansen heard Haley tell Garrison that he would call back on his "other one." After Haley called back from a different phone number moments later, Johansen listened to Haley explain to Garrison that he had left the key to Garrison's truck in the spot where Johansen had found the key. Johansen did not detect any confusion from Haley regarding the key.

Thus, the jury was aware of the possibility that Haley may not have placed the drugs in Garrison's truck or may not have been present at the scene. The jury knew it was possible that Garrison may have instead placed the drugs in the truck. Yet the jury found the State's evidence establishing Haley's presence at the scene and connecting Haley to the drugs in the truck more persuasive. The "Haley Contact #1 03-01-2018" recording does not convey what time of day that call occurred.

We can take judicial notice of facts "generally known" or "capable of immediate and accurate determination by resort to easily accessible sources." K.S.A. 60-409(b); see *Ehrsam v. Borgen*, 185 Kan. 776, 778, 347 P.2d 260 (1959) (taking "judicial notice" of distances between two towns). Similarly, we take judicial notice that the distance between Atchison, Kansas, and St. Joseph, Missouri, is approximately 24 miles by car. Accordingly, a person could be present both in Atchison and St. Joseph on the same day.

Considering the evidence already known to the jury of the possibility of someone else placing the drugs in Garrison's truck and the short distance between Atchison and St. Joseph, even if the "Haley Contact #1 03-01-2018" recording was captured on February 16, 2018, it does not create a reasonable probability of a different outcome in the trial. There was no *Brady* violation, and the district court did not abuse its discretion in denying Haley's motion for new trial.

IV.     THE PROSECUTOR DID NOT COMMIT PROSECUTORIAL ERROR BY ALLEGEDLY LABELING AUDIO DISKS WITH INACCURATE DATES

*Preservation*

Haley claims he preserved this issue through his motion for a new trial claim that Exhibit 24 was not produced before trial. The State responds that Haley argues for the first time on appeal that the recordings at issue were captured on different days than their labels represent. The State asks us not to review this issue.

Although Haley argued in his motion for a new trial that the State failed to disclose Exhibit 24, he did not raise a prosecutorial error claim regarding that exhibit. Haley also argues on appeal that the State inaccurately labeled the exhibit as being captured on February 12, 2018. He did not make that claim at the district court.

At a motion in limine hearing before trial, Haley objected to all audio disks based on labels law enforcement had written on each disk, describing what they recalled to be contained on the disks. Haley stated he believed labeling the disks with the dates they were captured was appropriate, but that the jury should decide on its own what it believed the conversations contained on each disk to be about. At trial, Haley renewed his pretrial objection to the admission of Exhibit 24. He did not object to the date written on Exhibit 24.

Haley's second prosecutorial error claim—that the State inaccurately dated the "Haley Contact #1" audio recording turned over after trial—was also not presented to the district court. Similar to his claim regarding Exhibit 24, Haley argued at the district court that the State suppressed the recording turned over after trial, but he did not argue that the State labeled the recording with the wrong date.

Appellate courts will review a prosecutorial error claim based on a prosecutor's statements made during voir dire, opening statement, or closing argument without a contemporaneous objection. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). But Haley's prosecutorial error claims are not comments by the prosecutor made during voir dire, opening statement, or closing argument. Instead, Haley seeks to recast his pretrial evidentiary arguments as prosecutorial error.

As noted previously, issues not presented to the district court generally cannot be raised on appeal. There are three exceptions to this rule:

"(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason." *Perkins*, 310 Kan. at 768.

"An appellant generally fails to preserve an issue for appellate review if he or she violates the provision in . . . Rule 6.02(a)(5) . . . requiring . . . an explanation why the issue can be considered on appeal even though not raised in the district court." *State v. Ochoa-Lara*, 312 Kan. 446, Syl., 476 P.3d 791 (2020); see Supreme Court Rule 6.02(a)(5). Haley does not attempt to argue that this issue is reviewable under any of the three exceptions. We therefore do not reach the merits of this issue.

V.    HALEY'S SENTENCING JOURNAL ENTRY SHOULD REFLECT THE SENTENCE PRONOUNCED FROM THE BENCH

At sentencing, the district court imposed consecutive sentences for counts I and II and concurrent sentences for counts III, IV, and V, for a controlling sentence of 110 months. In the sentencing journal entry, however, the district court listed consecutive sentences for counts I and III and concurrent sentences for counts II, IV, and V, resulting in a higher sentence of 153 months.

Under Kansas law, "[a] sentence in a criminal case is effective at the moment the court pronounces it from the bench. A sentencing judgment does not derive its effectiveness from the sentencing journal entry. The journal entry merely records the sentence imposed." *State v. Juiliano*, 315 Kan. 76, 84, 504 P.3d 399 (2022).

Recognizing this error, on January 5, 2024, the district court filed an amended journal entry in an attempt to reflect the sentence pronounced from the bench. The amended journal entry of sentencing incorrectly lists a controlling prison sentence of 116 months. Accordingly, we remand with directions to correct the journal entry, which should state that Haley's prison sentence is 110 months.

Affirmed in part and remanded with directions.